# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE FINGER,<br><br>Plaintiff,<br><br>v.<br><br>SILVERBOW RESOURCES, INC., MARCUS C. ROWLAND, MICHAEL DUGINSKI, GABRIEL L. ELLISOR, DAVID GEENBERG, CHRISTOPH O. MAJESKE, CHARLES W. WAMPLER, and SEAN C. WOOLVERTON,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against SilverBow Resources, Inc. ("SilverBow" or the "Company") and the members of SilverBow's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to acquire Sundance Energy, Inc. ("Sundance") (the "Proposed Transaction").

2. On April 13, 2022, SilverBow entered into a Purchase and Sale Agreement with Sundance, Armadillo E&P, Inc. ("Armadillo"), SEA Eagle Ford, LLC ("SEA" and together with Sundance and Armadillo, the "Sellers"), and SilverBow Resources Operating, LLC ("Buyer") (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Buyer will acquire, directly or indirectly, all of Sellers' right, title and interest in certain oil and gas properties and related assets located in Atascosa, La Salle, Live Oak and McMullen Counties, Texas for approximately $225 million in cash, subject to customary closing adjustments, and 4.1 million shares of SilverBow common stock (the "Proposed Transaction").

3. Under the Merger Agreement, SilverBow is required to issue additional shares of SilverBow common stock (the "Share Issuance"), which account for 24.6% of the outstanding number of shares of Company common stock as of April 13, 2022.  As a New York Stock Exchange ("NYSE") listed company, SilverBow is required by NYSE listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock.  Thus, the Proposed Transaction is contingent upon SilverBow shareholders voting to approve the proposed Share Issuance.

4. On May 9, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  Specifically, the Proxy Statement, which recommends that SilverBow stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for SilverBow, Sundance and the pro forma combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Barclays Capital Inc. ("Barclays"); and (iii) potential conflicts of interest faced by Barclays.

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SilverBow stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6. The special meeting for SilverBow stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for June 21, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and SilverBow's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. SilverBow's common stock trades on the NYSE, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of SilverBow common stock.

11. Defendant SilverBow is a Delaware corporation, with its principal executive offices located at 920 Memorial City Way, Suite 850, Houston, Texas 77024. SilverBow's shares trade on the NYSE under the ticker symbol "SBOW."

12. Defendant Marcus C. Rowland has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Michael Duginski has been a director of the Company at all relevant times.

14. Defendant Gabriel L. Ellisor has been a director of the Company at all relevant times.

15. Defendant David Geenberg has been a director of the Company at all relevant times.

16. Defendant Christoph O. Majeske has been a director of the Company at all relevant times.

17. Defendant Charles W. Wampler has been a director of the Company at all relevant times.

18. Defendant Sean C. Woolverton has been Chief Executive Officer and a director of the Company at all relevant times.

19. Defendants identified in paragraphs 12-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Founded in 1979, SilverBow is an oil and gas company that acquires and develops assets in the Eagle Ford shale and Austin Chalk located in South Texas. The Company leverages its understanding of regional reservoirs from over 30 years of history operating in South Texas to assemble high quality drilling inventory while continuously enhancing its operations to maximize returns on capital invested. As of December 31, 2021, SilverBow had proved reserves of 1,416 billion cubic feet of natural gas equivalent.

**The Proposed Transaction**

21.     On April 14, 2022, SilverBow announced that it had entered into the Proposed Transaction, stating, in relevant part:

> HOUSTON -- SilverBow Resources, Inc. (NYSE: SBOW) ("SilverBow" or "the Company") announced today it has entered into a definitive agreement to acquire substantially all of the assets of Sundance Energy, Inc. and certain affiliated entities (collectively, "Sundance") for a total purchase price of $354 million and up to $15 million of contingent payments based on future commodity prices. The Sundance transaction, which is expected to close in the third quarter of 2022, has been unanimously approved by the Boards of Directors of both companies. The closing of the transaction is subject to SilverBow shareholder approval and satisfaction or waiver of customary closing conditions.
>
> SilverBow also announced today that it has entered into a definitive agreement to acquire certain assets from SandPoint Operating, LLC, a subsidiary of SandPoint Resources, LLC, (collectively, "SandPoint") for a total purchase price of $71 million. The oil and gas assets target the Eagle Ford and Olmos formations in La Salle and McMullen counties. The SandPoint transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the second quarter of 2022, subject to customary closing conditions.
>
> Sundance Overview:
>
> - Compelling industrial logic given highly contiguous acreage to SilverBow's existing position; adds 39,000 net acres in Atascosa, La Salle, McMullen and Live Oak counties
> - January 2022 net production of 11,100 Boe/d (84% liquids / 65% oil)
> - Proved Developed Producing ("PDP") PV-10 of approximately $277 million[1]
> - Approximately 200 gross / 155 net de-risked, high return locations with IRRs exceeding 200% at 4/6/22 NYMEX strip pricing

- 2022E Adjusted EBITDA of approximately $170 million[2,3], implying an attractive 2.1x purchase price multiple. Expected to add significant free cash flow ("FCF") in 2022

SandPoint Overview:

- Contiguous acreage in La Salle and McMullen counties, with ~27,000 net acres
- May 2022E net production of 4,650 Boe/d (70% gas, 30% liquids) with two new wells expected to be coming online in the second quarter of 2022
- PDP PV-10 of approximately $89 million[1]
- Approximately 45 gross / 44 net de-risked, high return locations with IRRs exceeding 80% at 4/6/22 NYMEX strip pricing
- 2022E Adjusted EBITDA of approximately $29 million[2,3], implying an attractive 2.4x purchase price multiple

Pro Forma Company Including Sundance and SandPoint:

- Projected full year 2022 key metrics[4]:
  - Net production of 300-330 MMcfe/d (64% gas)
  - Adjusted EBITDA of $490-$530 million
  - Capital expenditures of $260-$300 million
  - FCF of $180-$250 million
- Increases 2022E FCF per share by approximately 50% compared to standalone SilverBow[2,3]
- Conservative leverage profile targeting total debt to Adjusted EBITDA less than 1.0x by YE22
- Double-digit annual production growth with less than 60% re-investment rate through 2024, expected to generate greater than $1.0 billion of FCF[2,4] during the same time period
- Increases SilverBow's acreage footprint by 50% to approximately 198,000 net acres
- Deep inventory of more than 645 gross / 507 net high-return locations across the Company's Eagle Ford and Austin Chalk focus areas
- Pro forma PDP reserves of approximately 750 Bcfe and PDP PV-10 of $1.6 billion[1,2]
- Estimated annual synergies of approximately $15 million with further potential savings upon integration. Synergies not included in metrics presented
- SilverBow intends to run one drilling rig on the acquired assets starting in the second half of 2022 in addition to the one rig SilverBow is currently running
- Updated full year 2022 guidance and expected upsized borrowing base amount to be announced in conjunction with the closing of both transactions

***MANAGEMENT COMMENTS***

6

SeanWoolverton, SilverBow's Chief Executive Officer, commented, "SilverBow has a disciplined approach towards growth based on our strict investment criteria. Today's transformative news builds on our recent series of transactions while advancing a number of our strategic objectives. These deals mark the fourth and fifth acquisitions we have announced since the second half of last year, which cumulatively total over $550 million of transaction value. We are significantly increasing SilverBow's size, scale and cash flow while maintaining a conservative balance sheet and a leverage ratio of less than 1.0x by year-end 2022. Pro forma for the transactions, liquids production will comprise a third of our production mix, allowing us to capture margin uplift from the current strength in liquids pricing. SilverBow will now have even greater optionality to allocate capital between both oil and gas development, which has been a cornerstone of the Company's strategy over the last few years."

Mr. Woolverton commented further, "There is strong industrial logic for these acquisitions as the acreage overlap will allow SilverBow to drive synergies and optimize development plans. We estimate we have the ability to generate approximately $450 million of incremental free cash flow through 2024, with total SilverBow pro forma free cash flow greater than a $1.0 billion. We have already identified approximately $15 million of annual synergies through a combination of operational and corporate efficiency gains. The significant production and cash flow from existing wells, coupled with a conservative balance sheet and ample liquidity, positions SilverBow to self-fund high rate of return projects and simultaneously further our consolidation efforts. While we have created significant shareholder value to-date, we are excited about the prospects that lie ahead. We look forward to integrating our latest transactions and continuing to unlock value for our stakeholders moving forward."

* * *

*SUNDANCE TRANSACTION DETAILS AND FUNDING*

The Sundance transaction has an effective date of May 1, 2022 and is expected to close in the third quarter of 2022. The aggregate purchase price of approximately $354 million consists of $225 million in cash, subject to customary closing adjustments, and 4.1 million shares of SilverBow common stock valued at $129 million based on its 30-day volume weighted average price as of April 8, 2022. Up to an additional $15 million dollars of contingent payments may be payable to Sundance based upon future commodity prices. In addition to customary closing adjustments, SilverBow will benefit from a $16.5 million downward adjustment to cash consideration at close related to the assumption of Sundance's existing hedge book. SilverBow intends to fund the cash portion of the consideration, fees and expenses with cash on hand and borrowings under its revolving credit facility.

**The Materially Incomplete and Misleading Proxy Statement**

22. On May 9, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that SilverBow stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for SilverBow, Sundance and the pro forma combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Barclays; and (iii) potential conflicts of interest faced by Barclays.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for SilverBow, Sundance and the Pro Forma Combined Company*

23. The Proxy Statement fails to disclose material information concerning the financial projections for SilverBow, Sundance and the pro forma combined company.

24. Specifically, with respect to the "Prospective financial information regarding Sellers," the "Prospective financial information regarding SilverBow," and the "Prospective financial information regarding SilverBow Pro Forma for the Transaction," the Proxy Statement fails to disclose the line items underlying the calculation of: (i) EBITDA; and (ii) Unlevered Free Cash Flow.

25. Moreover, according to the Proxy Statement, in arriving at its fairness opinion, Barclays:

- reviewed and analyzed the projected pro forma impact of the Transaction on the future financial performance of SilverBow, including cost savings, operating synergies and other strategic benefits expected by the management of SilverBow to result from a combination of the businesses (the "Expected Synergies");

- reviewed and analyzed estimates of proved, probable and possible oil and gas reserves and resources for SilverBow as prepared by management of SilverBow and furnished to Barclays by SilverBow (the "SilverBow Resources Estimates");

- reviewed and analyzed estimates of proved, probable and possible oil and gas reserves and resources for Sundance as prepared by the management of Sundance and as adjusted by management of SilverBow and furnished to Barclays by SilverBow (such adjusted estimates, the "Sundance Resources Estimates"); [and]

- reviewed and analyzed estimates of proved, probable and possible oil and gas reserves and resources for SilverBow Pro Forma prepared by management of SilverBow and furnished to Barclays by SilverBow (the "Pro Forma Resources Estimates")[.]

Proxy Statement at 33. The Proxy Statement fails, however, to disclose each of the Expected Synergies, the SilverBow Resources Estimates, the Sundance Resources Estimates and the Pro Forma Resources Estimates furnished to Barclays by SilverBow management and relied upon in connection with Barclays' fairness opinion.

*Material Misrepresentations and/or Omissions Concerning Barclays' Financial Analyses*

26. The Proxy Statement fails to disclose material information concerning Barclays' financial analyses.

27. With respect to Barclays' *Net Asset Value Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the cash flows utilized in the analysis for each of Sundance, SilverBow and SilverBow Pro Forma; (ii) the after-tax general and administrative costs provided by SilverBow management for Sundance, SilverBow and SilverBow Pro Forma; (iii) the other capital expenditure and cost adjustments provided by SilverBow management for Sundance, SilverBow and SilverBow Pro Forma utilized in the analysis; (iv) the present value of hedges for each of SilverBow, Sundance and SilverBow Pro Forma; and (v) the discount rate range utilized and the inputs and assumptions underlying the discount rate range.

28. With respect to Barclays' *Selected Comparable Transaction Analysis* and *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and

financial metrics for each of the selected transactions and companies analyzed by Barclays, respectively.

29. With respect to Barclays' *Pro Forma Merger Consequences Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the accretion to the standalone free cash flow per share for SilverBow for 2022 and 2023; and (ii) the accretion to the standalone cash flow per share for SilverBow for 2022 and 2023.

30. With respect to Barclays' *Equity Research Analyst Price Targets Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Barclays' Potential Conflicts of Interest*

31. The Proxy Statement fails to disclose material information concerning Barclays' potential conflicts of interest.

32. For example, the Proxy Statement sets forth, "Barclays has performed various investment banking and financial services for SilverBow in the past, and is likely to perform such services in the future, and has received, and is likely to receive, customary fees for such services." *Id.* at 41. The Proxy Statement, however, fails to disclose the services Barclays has provided to SilverBow in the past and the amount of compensation Barclays has received for such services provided.

33. In sum, the omission of the above-referenced information renders statements in the "Unaudited Financial Projections of SilverBow" and "Opinion of SilverBow's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of SilverBow will be unable to make a sufficiently

informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SilverBow**

34. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

35. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. SilverBow is liable as the issuer of these statements.

36. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

37. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

39. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

40. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of SilverBow within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SilverBow and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

46. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of SilverBow, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Share Issuance, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 3, 2022                  **ACOCELLI LAW, PLLC**

By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*